John McNARY and Dan Keown

v.

AMERICAN SAVINGS AND LOAN AS-
SOCIATION, Dallas Federal Savings
and Loan Association, Leader Savings
and Loan Association, Metropolitan
Savings and Loan Association, Oak Cliff
Savings and Loan Association, South-
west Savings Association.

Civ. A. No. CA–3–74–459–B.

United States District Court,
N. D. Texas,
Dallas Division.

Nov. 21, 1977.

Sam Passman, Jerry C. Alexander, Passman, Jones, Andrews, Coplin, Holley & Co., Dallas, Tex., for Murray Savings Association, sued herein as Leader Savings & Loan Association.

Edith DeBusk, DeBusk & DeBusk, Dallas, Tex., for Southwest Savings Association.

John W. Clark, Jr., Turner, Hitchins, McInerney, Webb & Hartnett, Dallas, Tex., for American Savings Association.

Ralph W. Pulley, Jr., Robert K. Frisch, Jr., Phinney, Hallman, Pulley & Coke, Dallas, Tex., for Metropolitan Savings & Loan Association.

Ralph E. Hartman, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., for Dallas Federal Savings & Loan Association.

Bruce W. Bowman, Jr., Turner, Rodgers, Sailers, Jordan & Calloway, John H. McElhaney, Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., for Oak Cliff Savings & Loan Association.

Howard A. Specter, Litman, Litman, Harris & Specter, P.A., Pittsburgh, Pa., Wallace Craig, Wallace Craig, Inc., Hurst, Tex., Jim D. Lovett, Lovett & Herrington, P.C., Clarksville, Tex., Charles L. Caperton, Law Offices of Charles L. Caperton, Dallas, Tex., for plaintiffs.

## JOINT MOTION FOR FINAL APPROVAL OF COMPROMISE AND SETTLEMENT

HUGHES, District Judge.

The parties in this action, by and through their respective counsel, jointly petition this Honorable Court as follows:

1. On August 30, 1977, this Court preliminarily approved the terms of a Stipulation of Compromise and Settlement which had been presented to the Court (the "Stipulation"), directed that notice be given to class members and set November 3, 1977 as the date for a settlement hearing.

2. The terms of the Court's August 30, 1977 Order and the provisions of the Stipulation have been complied with.

3. Of the thousands of class members who received notice of the proposed settlement, only two objected and only one is now objecting to the settlement. The objection lacks merit and the settlement should be approved as just, fair, reasonable and adequate to the class.

4. The parties are desirous of settling and compromising the litigation on the terms and conditions embodied in the Stipulation, as amended by the "Notice of and Motion for Technical Amendment to Stipulation of Compromise and Settlement" filed September 13, 1977.

WHEREFORE, pursuant to Paragraph 7 of the Stipulation, the parties jointly move this Honorable Court to approve the proposed settlement finally as set forth in the Stipulation of Compromise and Settlement and the proposed Order annexed hereto.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

In accordance with Rule 23 of the Federal Rules of Civil Procedure, this matter was heard on November 3, 1977, pursuant to notice to the parties and class members, to determine the fairness, reasonableness, and adequacy of the proposed compromise and settlement of this action embodied in the Stipulation of Compromise and Settlement (hereinafter the "Stipulation").

The Court having considered the pleadings, discovery, affidavits, exhibits and arguments submitted in connection with the Stipulation; the Court having heard from all interested persons who appeared at the hearing or who made written submissions to the Court; and the Court having considered the objection filed by one of the class members, makes the following Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure:

1. The plaintiffs' theories of liability are that (a) the defendants agreed among themselves to preclude payment of interest to class members and not to capitalize their escrow payments; (b) the escrow service was tied to the extension of mortgage credit; (c) the defendants were contractually bound to pay interest on or to capitalize escrow payments made by the class members or not use the class' funds; (d) the defendants breached a contractual, fiduciary and other duties by obtaining benefits from the use of the escrow funds; and (e) the escrow funds should be imposed with a constructive trust; (f) the defendants conspired to charge uniform origination and transfer fees.

2. The action is a class action on behalf of all persons who did not previously elect to be excluded from this litigation and who, at any time between May 20, 1970, and October 25, 1976, inclusive held a residential mortgage under the terms of which accounts were established and maintained and into which mortgagors made monthly installment payments for annual real estate taxes and/or fire and/or hazard insurance premiums. Included within this class are persons who paid transfer fees in connection with the transfer of residential mortgages.

3. The matters underlying the claims of plaintiffs have been subjected to thorough review and analysis by the parties and the Court from and after the filing of this action in May, 1974. Plaintiffs have engaged in comprehensive discovery consisting of depositions, interrogatories, requests for admissions and extensive production and review of documents.

4. Additional information concerning the nature and profitability of the matters underlying plaintiffs' claims is available to the Court as a result of other studies concerning those matters. U. S. Savings and Loan League, *Factors Governing the Economics of Escrow Accounts*, January, 1973;

Comptroller General of the United States, *Study of the Feasibility of Escrow Accounts on Residential Mortgages Becoming Interest Bearing*, 1973; *Report of the Commissioner of Banks of the Commonwealth of Massachusetts*, April 21, 1972.

5. The record was further developed by the filing of the affidavits submitted by the plaintiffs and the defendants, plaintiffs' counsel, and by certain class members and others with respect to the economics of the various defendant's mortgage escrow operations.

6. The parties filed with the Court a Joint Motion for Preliminary Approval of Compromise and Settlement. Attached to the Motion was the Stipulation, which Stipulation details the terms of the proposed compromise and settlement. After meeting with counsel and considering the terms of the Stipulation, the Court, by its Order of August 30, 1977, approved preliminarily the proposed compromise and settlement.

7. In addition, by its Order, the Court approved the form and method of notice to class members, set October 21, 1977 as the deadline for filing written objections to the proposed compromise and settlement, and scheduled a hearing to be held before this Court on November 3, 1977 for the purpose of determining whether the proposed compromise and settlement as provided in the Stipulation should be finally approved as being fair, reasonable and adequate and a judgment entered so ordering.

8. The Stipulation provides for the compromise, settlement and release of all claims or causes of action asserted or which might have been asserted against the defendants, including but not limited to those related to or in connection with the establishment or maintenance of accounts into which payments are or have been made monthly equivalent to $\frac{1}{12}$ of the annual real estate taxes and/or insurance premiums or the requiring, commingling or use of such payments without paying interest thereon or accounting for profits or charging interest on the mortgage indebtedness unreduced by such payments, or any payment, practice or procedure related to the transfer of any residential mortgage.

9. The terms of the settlement are set forth in detail in two (2) instruments:

(a) The "Stipulation"; and

(b) The "Notice of and Motion for Technical Amendment to Stipulation of Compromise and Settlement" filed herein September 13, 1977.

The full terms of both instruments are hereby approved by the Court and are incorporated by reference in these findings. Whenever the term "Stipulation" is used in any of the instruments defining, reflecting or referring to the disposition of this suit, the term "Stipulation" shall conclusively be deemed to include both the original Stipulation and the Notice of and Motion for Technical Amendment to Stipulation of Compromise and Settlement filed herein on September 13, 1977.

10. The Stipulation provides that the plaintiffs and their attorneys will apply to the Court for an allowance of fair and reasonable attorneys' fees and reimbursement for their costs and expenses in connection with the prosecution, compromise and settlement of this class action. It further estimates that their costs and expenses are not anticipated to exceed $40,000.00 and that they will petition for a fee, in addition to their expenses and costs, which will not exceed $268,220.00, with interest from September 1, 1977.

11. Approximately 63,000 notices, in the form approved by the Court, of the proposed compromise and settlement and of the settlement approval hearing to be held herein were sent by first-class mail, postage prepaid, to each class member previously identified and to whom Notice of Pendency of Class Action had been mailed previously, excluding those persons who previously elected to be excluded from the class pursuant to Rule 23(c)(2). The Court further finds that notice of the pendency and certification of this suit as a class action was duly and adequately served by giving the best notice practicable under the circumstances, including service of individual notice to all class members who could be identified.

12. As of the final day for filing of written objections to the proposed settlement with the Clerk of this Court, only two class members, Burke M. Shea, Jr. and Donald K. Buckman, filed written objections and Donald K. Buckman has since duly withdrawn his objection. As of November 1, 1977, nearly 9,000 persons had filed claim forms against the settlement fund. Class members have until December 1, 1977 to submit claims.

13. The reaction of the class to the notice of the proposed compromise and settlement must be considered by the Court and the response to date may be viewed as an approval by the class of the fairness and reasonableness of the settlement. *Cotton v. U. S. Pipe & Foundry Co. Coke By-Products Plant*, 559 F.2d 1326 (5th Cir. 1977); *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799 (3d Cir. 1974).

14. Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action cannot "be dismissed or compromised without the approval of the court." Pursuant to this rule, the authority to approve a settlement is left to the sound discretion of the trial Court. *Cotton, supra* ; *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975.)

15. The standard in reviewing proposed settlements of class actions is whether the proposed settlement is "fair and adequate in light of the interests of all the parties". Wright & Miller, 7A *Federal Practice and Procedure* § 1839, at 432–33 (1972). Courts have long noted that "In examining a proposed compromise . . . the court does not try the case. The very purpose of compromise is to avoid the delay and expense of such a trial." *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971). As more recently stated, "the trial court in approving the settlement . . . [does not] have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute . . ." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974). A settlement hearing is not a "rehearsal of the trial". *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972).

16. A court is entitled to rely upon the judgment of experienced counsel for the parties, *Cotton, supra*, and generally will consider the facts of a settlement in a light favorable to promoting settlements. As the United States Court of Appeals for the Fifth Circuit stated in *Florida Trailer and Equipment Co. v. Deal*, 284 F.2d 567 (5th Cir. 1960):

> "Of course, the approval of a proposed settlement does not depend on establishing as a matter of legal certainty that the subject claim or counterclaim is or is not worthless or valuable. The probable outcome in the event of litigation, the relative advantages and disadvantages are, of course, relevant factors for evaluation. *But the very uncertainties of outcome in litigation, as well as the avoidance of wasteful litigation and expense, lay behind the Congressional infusion of a power to compromise. This is a recognition of the policy of the law generally to encourage settlements.* This could hardly be achieved if the test on hearing for approval meant establishing success or failure to a certainty." 284 F.2d at 571. (Emphasis added.)

17. Compromise is the essence of a settlement and the Court should not make the proponents of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes. *Cotton, supra.*

18. The factors which should be considered in evaluating the fairness of a proposed settlement were articulated in *Girsh v. Jepson, supra*, at 157, and *City of Detroit v. Grinnell Corp., supra*, at 463, as follows:

> ". . . (1) the complexity, expense and likely duration of the litigation . .; (2) the reaction of the class to the settlement . . .; (3) the stage of the proceedings and the amount of discovery completed . . .; (4) the risks of es-

tablishing liability . . .; (5) the risks of establishing damages . . .; (6) the risks of maintaining the class action through the trial . . .; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . .; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . ."

19. In applying the above factors to this proposed settlement, the Court has also considered the judgment of counsel and the presence of good faith bargaining between the contending parties. *Cotton, supra.* See also, *Neuman v. Electronic Specialty Co.*, 1970–71 Fed.Sec.L.Rep. § 92,955 at 90,516 (N.D.Ill., 1971). Courts have consistently refused to substitute their business judgment for that of counsel, absent evidence of fraud or overreaching:

"The Court will *not* substitute its business judgment for that of the parties; 'the only question * * * is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'"

*Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y.1971). *Accord, Schleiff v. Chesapeake and Ohio Railway Company*, 43 F.R.D. 175, 178 (S.D.N.Y. 1967). The Court finds that fraud, collusion or the like are not present.

20. The discovery conducted by the parties, together with the stated positions of the parties as set forth in the pleadings and the extensive research undertaken by the various parties with respect to the legal issues raised herein, as reflected by the briefs of the parties in support of the proposed compromise and settlement and in matters raised previously herein, provide the Court with a meaningful basis from which to make a reasonable assessment of the merits and obstacles respecting the various claims raised by plaintiffs.

21. In assessing the fairness, reasonableness and adequacy of the proposed compromise and settlement, the Court has compared the results achieved by the settlement with plaintiffs' chances of success in litigating the substantial, complex, and sharply contested legal and factual issues involved in this action. These issues, which are presented in depth by the memoranda filed in support of the proposed compromise and settlement, which memoranda the Court hereby incorporates by reference and makes a part of this record, include the following:

(a) Whether it could be proved that two or more of the defendants were parties to an illegal combination, conspiracy, agreement or contract. The defendants vigorously deny any such conduct and the record would not support any finding that such conduct ever occurred. Further, there is sufficient evidence of non-uniform conduct by certain of the defendants at various times to merit the conclusion that this claim is uncertain. *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610 (1939); also see *U. S. Steel Corp. v. Fortner Enterprises, Inc.*, 429 U.S. 610, 97 S.Ct. 861, 51 L.Ed.2d 80 (1977).

(b) Whether plaintiffs could demonstrate the existence of an express trust or other fiduciary relationship with respect to any of the three defendants from which they borrowed funds and whether plaintiffs could establish a contractual right to be paid interest or to receive some other benefit from the use of escrow funds by any of the three defendants from which they borrowed funds. The cases cited by parties in their memoranda in support of settlement demonstrate that no plaintiff has prevailed on any such theory on the merits. Indeed, seventeen similar cases have been lost by plaintiffs. See plaintiffs' memorandum p. 8.

(c) Whether and to what extent the plaintiffs could establish damages to them or profit to the defendants. The studies referred to above and the evidence relied upon at the settlement hearing reflect the difficulties which would be confronted here.

(d) Whether the escrow system is immune to any extent from antitrust attack. *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).

22. The Court also notes that substantial additional time and expense would be required in order to try this case. The trial itself would undoubtedly extend over a period of weeks as the various parties muster witnesses to support their particular interests. Moreover, following such extended litigation, it would be unrealistic not to anticipate appeals from the results reached at trial.

23. Whether sums previously argued or urged by the plaintiff should be considered by the Court as the figure which represents the best possible recovery, or whether the Court should make a different appraisal of the best possible recovery, which might lead to a figure substantially less than that originally sought by the plaintiffs, it is clear the settlement fund represented by this proposed compromise and settlement is substantial and reasonable. In rejecting appellants' argument that a settlement was inadequate as a matter of law where it amounted to only 12% of what the lower court found was the potential recovery, the Court of Appeals for the Second Circuit in *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 455 (2nd Cir. 1974), responded:

"The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."

In a footnote, the court went on to explain:

"In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." (495 F.2d at 455, n. 2).

Refusing to make an abstract comparison between the potential recovery and the proposed settlement, the court pointed out that any judgment as to the reasonableness of the proposed settlement cannot be reached without reference to the strength of plaintiffs' claims and the other factors which are to be weighed in assessing the merits of a proposed settlement.

Furthermore, it is impossible to reach an informed assessment of the reasonableness of this settlement fund in light of the best possible recovery without considering the substantial, nonmonetary benefits which the class members will receive under the terms of Paragraph 9 of the proposed settlement. See *Merola v. Atlantic Richfield Company*, 515 F.2d 165 (3rd Cir. 1975).

Given the substantial size of the settlement fund, which has been earning interest since September 1, 1977, and the significant, nonmonetary benefits flowing to the class, it is evident that the settlement, both in light of the best possible recovery and in light of all the attendant risks of litigation, is fair, just, adequate and reasonable and is hereby approved by the Court.

24. The Court has also considered at some length the objection to the proposed compromise and settlement filed by Mr. Shea, the only remaining objector. However, in light of the above-discussed factors and for the following reasons, the Court finds that the objection is without merit and the settlement is fair, just, reasonable and adequate:

(a) As to the suggestion that the defendants are not paying all costs of suit, it need only be noted that the defendants in fact are paying those costs, that they have paid the sum of $576,440.00 for the benefit of the class and that the right of plaintiffs' counsel to be paid fees and expenses from the resulting fund which they created under the equitable fund principle, *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), does not render the settlement unfair;

(b) As to the contention that the defendants are either liable or not liable and that a payment of anything other than one hundred cents on the dollar claimed, it is noted again that the recovery bears a reasonable and substantial relationship to the possible recovery and

that compromise is the essence of settlement. *Cotton, supra* ; *City of Detroit v. Grinnell Corp., supra.* The cases cited in the memoranda filed in support of the proposed settlement, particularly the seventeen cases in which the plaintiffs recovered nothing, demonstrate the reasonableness, fairness and adequacy of this settlement. It is also apparent that the objector's net recovery will amount to substantially more than he believed it would. Similarly, the economic information presented in support of the settlement and discussed at the settlement hearing strongly suggests, as the Court finds, that the recovery represents a very substantial percentage of the defendants' combined net income on their escrow operations;

 (c) As to the settlement notice, the Court finds again that it comports with due process requirements, with the mandate of the Court of Appeals in *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088 (5th Cir. 1977), and with the guidelines contained in § 1.46 of the *Manual For Complex Litigation* ;

(d) As to the suggestion that the plaintiffs' attorneys may have been working only for themselves, this Court has found no evidence of such or of any fraud, collusion or the like. Counsel have ably and adequately represented the class for 3½ years and the Court has independently scrutinized the fee petition.

25. The Court, after careful scrutiny of the Stipulation and the affidavits, depositions, exhibits and other relevant data in the record, finds that the proposed compromise and settlement is fair, reasonable and in the best interest of the class.

26. The Court finds that the proposed compromise and settlement was arrived at in an adversary posture by counsel and was the result of good faith bargaining by all parties. The Court further finds that the members of the class were represented in the negotiations by counsel who are intimately familiar with the strengths and weaknesses of the case and who are skilled and experienced in litigation of this kind.

27. The Court will not substitute its judgment for that of the parties where, as here, the proposed settlement is fair, just, adequate and reasonable and is in the clear best interests of the class.

28. The final issue remaining before this Court focuses upon plaintiffs' attorneys' fees and expenses. The Stipulation provides that the Plaintiffs will apply to the Court for an allowance of fair and reasonable attorneys' fees and reimbursement for their expenses in connection with the prosecution, compromise and settlement of this class action.

29. The Plaintiffs have applied for fees. In support of their application, they filed a Plaintiffs' Petition and Memorandum Re Attorneys' Fees and Expenses which was supplemented by affidavits. The affidavits set forth the normal, non-contingent hourly billing rate and the status of each person performing services, e. g., partner, associate paraprofessional.

30. The considerations for determining fees are set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974); *Lindy Bros. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), and *Merola v. Atlantic Richfield Co.*, 493 F.2d 292 (3d Cir. 1974). Those cases require the court first to determine the "objective" or "lodestar" value of the time involved.

31. The Court finds the objective value of the time of the persons involved in representing the Plaintiffs to be as set forth in their Petition as of the dates set forth therein. The total objective value, without any incentive for any other factor, amounts to $151,005.00 for 2,236 hours of work which the Court finds to have been devoted to this litigation.

 32. In determining whether and to what extent the objective value of the time as found by the Court should be increased or decreased, the Court must take into account other factors, including the contingent nature of success, the quality of the work performed and the benefit or re-

sult achieved as a result of these efforts. The Court must also consider the substantial value of the non-monetary relief obtained. *Merola v. Atlantic Richfield Co., supra.*

33. The Court has considered the entire record and the affidavits which have been made a part of that record, the highly contingent nature of success in this litigation, the substantial benefits achieved by the settlement and the quality of the services performed by plaintiffs' attorneys. Based upon all of the foregoing considerations, the Court finds that the sum of $232,800.00, together with interest from November 3, 1977, constitutes fair and reasonable attorneys' fees and that the sum of $40,000.00 constitutes fair and reasonable costs and expenses and that said sums should be paid as set forth in Paragraph 5 of the Stipulation.

34. The Defendants have denied all liability and wrongdoing whatsoever and jointly and severally have denied the material allegations of the Complaint and the Amended Complaint and have denied that they or any one of them committed or participated in any violations of the antitrust laws, of the common law, or of any fiduciary or contractual duties, or are otherwise liable in any manner with respect to the Matters Settled, or otherwise.

35. The Defendants have entered into this Stipulation solely to terminate all controversy concerning the Matters Settled, and to avoid the expense, inconvenience and distraction of further expensive and protracted litigation without any admission of any liability whatsoever by any of them.

36. The Plaintiffs have entered into this Stipulation to terminate all controversy concerning the Matters Settled in recognition of (1) the existence of contested issues of law and fact, (2) the risks of litigation, and (3) their determination that the compromise and settlement upon the terms contemplated in this Stipulation is in the best interests of and will substantially benefit the class members whom they represent.

## ORDER

WHEREAS, the parties have entered into and filed with this Court a Stipulation of Compromise and Settlement (the "Stipulation" as amended by the "Notice of and Motion for Technical Amendment to Stipulation of Compromise and Settlement" filed September 13, 1977) compromising and settling, among other things, the claims set forth in the Complaint and in the Amended Complaint (the "Complaint"), and

WHEREAS, the parties have petitioned this Court for entry of a final order, pursuant to Rules 23 and 41 of the Federal Rules of Civil Procedure, in connection with the compromise and settlement contemplated in the Stipulation, and

WHEREAS, the Court has considered the terms of the Stipulation and the single objection to the proposed settlement and has made appropriate findings of fact and conclusions of law, it is hereby found and

ORDERED:

A. That the Stipulation and the terms of the compromise and settlement of the claims contemplated by the Stipulations are fair, reasonable, adequate and not the product of collusion between the parties and are in the best interest of the class;

B. That the objections of Donald K. Buckman are duly withdrawn and the objections of Burke Shea, Jr. are overruled;

C. That pursuant to Rules 23 and 41 of the Federal Rules of Civil Procedure, the Complaint, and each and every count alleged therein, is dismissed with prejudice as to each of the Defendants and judgment will be entered accordingly;

D. That the terms of the Stipulation shall be consummated in the manner and at the times provided in the Stipulation and that the terms and provisions contained therein are hereby adopted herein by reference for all purposes and are expressly made a part of this Order with the full force and effect thereof as if fully set forth herein verbatim;

E. That based upon the information contained in the application of the Plaintiffs and their attorneys for fair and rea-

sonable fees, expenses and costs, in connection with the prosecution and settlement of the action, and the Court having considered the complexity of the litigation, the time and work expended, the competence and reputations of Plaintiffs' attorneys and the benefits to be received by the class, the Court finds that the sum of $232,800.00, together with interest from November 3, 1977, constitutes fair and reasonable attorneys' fees, that the sum of $40,000.00 constitutes fair and reasonable expenses and costs and that said sums should be paid as set forth in Paragraph 5 of the Stipulation.

## FINAL JUDGMENT

This Judgment is entered pursuant to the Court's Order presented for signature on even date herewith, on behalf of the class in this action. The class includes all persons or entities who did not previously elect to be excluded from this litigation and who, at any time from May 20, 1970 through October 25, 1976, held a residential mortgage with any of the defendants under the terms of which accounts were established and maintained and into which mortgagors made monthly installment payments for annual real estate taxes and/or fire and/or hazard insurance premiums. Included within the class are persons or entities who paid transfer fees in connection with the transfer of residential mortgages. Notice of the pendency and certification of this suit as a class action was duly and adequately served upon all class members as above defined, and notice of the proposed settlement was duly and adequately served upon class members who had not requested exclusion. A list of such class members is contained in the computer tapes tendered as exhibits herein, and in the affidavits of mailing, filed by parties. The requests for exclusion previously filed by persons to whom Notice of Pendency of Class Action was directed shall be maintained by the Clerk of the Court in the files in this civil action.

The settlement and compromise provided for in the Stipulation of Compromise and Settlement filed in this action as amended the "Notice of and Motion for Technical Amendment to Stipulation of Compromise and Settlement" filed September 31, 1977 has been approved and all class members and all parties shall be entitled to their rights thereunder. Plaintiff's attorneys shall receive the fees and expenses previously established by the Court to be paid from the settlement fund.

Approval of the settlement and this Judgment shall be interpreted so that the effect of the settlement will be for each member of the class to remise, release and forever discharge and covenant not to sue each of the Defendants, their present and former agents, employees, representatives, successors or assigns, and their former or present parent, subsidiary or affiliated companies for all claims, demands, liabilities, or causes of action known or unknown, which he, his heirs, representatives, estates or assigns may now or in the future claim to have by reason of any matter, cause or thing whatsoever to the date of final approval of the Stipulation which arises from all claims and causes of action which were or could have been asserted in the Complaint or Amended Complaint herein against defendants, including but not limited to those related to or in connection with the establishment or maintenance of accounts into which payments are or have been made monthly approximating one-twelfth of the annual real estate taxes and/or insurance premiums or the requiring, commingling or use of such payments without paying interest thereon or accounting for profits or charging interest on the mortgage indebtedness unreduced by such payments, or any payment, practice or procedure related thereto, or to the transfer of any residential mortgage, including, without limitation, all claims, rights, demands, causes of action and obligations whether state or federal asserted in this action.

The Court, by the entry of this Judgment intends to dispose of all matters in controversy affecting all parties, including all class members, and this Judgment is the Final Judgment of the Court.

The Complaint, and all amendments thereto, and each and every count alleged therein are hereby dismissed with prejudice as to each of the Defendants.

All parties shall bear the costs they have incurred, and no costs shall be taxed by the Clerk.