Berene **MURILLO**, on Behalf of herself and all other similarly situated persons, Plaintiff,

v.

**TEXAS A & M UNIVERSITY SYSTEM, and Dr. Edward A. Hiler, Director of the Texas Agricultural Experiment Station, Defendants.**

No. L–93–111.

United States District Court, S.D. Texas, Laredo Division.

Jan. 18, 1996.

444

Kay E. Drought, Texas Rural Legal Aid, Plainview, TX, for plaintiff.

Lydia Kimble–Wright and George R. Jennings, Asst. Attorneys General, Austin, TX, for defendant.

## AGREED CLASS ACTION CONSENT DECREE

KAZEN, District Judge.

Pending before the Court is the parties' Joint Motion for Class Certification, for Approval of Class Action Settlement and for entry of Agreed Class Action Consent Decree (Dckt. No. 35). Plaintiff Murillo filed this class action suit alleging violations of the Fair Labor Standards Act ("FLSA"), the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), the Federal Insurance Contribution Act ("FICA"), the Civil Rights Act under 42 U.S.C. § 1983, and the Texas Revised Civil Statutes under Article 695h. After many months of negotiations over the details of the settlement, the parties request the entry of the Agreed Class Action Consent Decree for the purpose of settling the claims at issue in this lawsuit.

## BACKGROUND

On August 10, 1993, Berene Murillo, on behalf of herself and all other similarly situated persons, filed this lawsuit against the Texas A & M University System and Dr. Edward A. Hiler, Director of the Agricultural Experiment Station. Plaintiff Murillo is an agricultural worker from West Texas who worked for the Defendants at the Agricultur-

al Experiment Station in Halfway, Hale County, Texas.

Plaintiff alleges that she and several hundred other farmworkers were misclassified as independent contractors by Defendants. Plaintiff claims that Defendants' misclassification of agricultural employees as independent contractors led to violations of the FLSA, the AWPA, the FICA, the Civil Rights Act under 42 U.S.C. § 1983, and the Texas Revised Civil Statutes under Article 695h. Specifically, Plaintiff claims that Defendants failed to pay the federally mandated minimum wage, the social security excise tax, and a special social security tax benefit entitlement that is afforded exclusively to Texas state employees. Plaintiff Murillo filed this class action suit under the Fair Labor Standards Act and the Migrant and Seasonal Agricultural Worker Protection Act for unpaid wages, liquidated damages, and injunctive and declaratory relief on behalf of all similarly situated agricultural workers.

Four months after this action was filed, Defendants and Plaintiff reached a settlement and requested the Court to stay the litigation (Dckt. No. 21). In the ensuing months, the parties negotiated the details of the settlement and sought the cooperation of the Internal Revenue Service to correct the farmworkers' tax problems. On June 26, 1995, the parties informed the Court that they had settled all of the class members' claims and moved for approval of a class settlement notice (Dckt. No. 34). The Court approved the class notice on June 30, 1995. The class notice was publicized for ninety (90) days, and the notice period ended on November 12, 1995. The parties' joint motion for class certification, for approval of class-action settlement and for entry of agreed class action consent decree is now properly before the Court.

## DISCUSSION

Settlements in class action suits are encouraged and favored. Court approval of settlements, however, is not a perfunctory function. District courts have a duty to determine whether the settlement is fair, reasonable, and adequate. *Parker v. Anderson*, 667 F.2d 1204, 1208–09 (5th Cir.), *cert. denied*, 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982). Although approval of a settlement is discretionary with the court, it is advisable for district courts to make findings showing that it considered the diverse interests and the factors necessary for a determination that the proposed settlement is fair and adequate. *See e.g., McNary v. Am. Sav. and Loan Ass'n*, 76 F.R.D. 644 (N.D.Tex.1977).

In deciding whether a settlement is fair and reasonable, the court does not decide the merits of the case. *Parker*, 667 F.2d at 1209. Rather, the court determines the fairness and adequacy of the settlement by considering the following factors: "(1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members." *Id.*

There is an initial presumption of fairness when a proposed class settlement was negotiated at arm's length by counsel for the class. 2 Alba Conte, *Newberg on Class Actions* § 11.41 (3rd ed. June 1995). This presumption is established if the court finds the following: the settlement was arrived at by arm's length bargaining, there was sufficient discovery informing the parties and the court of the issues, counsel for the parties are experienced in similar litigation, and the number of objectors is not large compared to the class size. "This initial presumption must then withstand the test of plaintiff's likelihood of success." *Id.* The burden of proving the fairness and adequacy of a settlement essentially consists in providing the court with sufficient background information which would enable it to evaluate the merits of the plaintiff's claims. *McNary*, 76 F.R.D. at 648–49.

It appears that the presumption of fairness has been established in this case. The parties diligently began negotiating after the suit was filed. On November 24,

1993, an agreement was reached to settle Plaintiff's claims. Thereafter, the parties negotiated the details of the settlement and sought the cooperation of the Internal Revenue Service to correct the class members' social security tax problems. After "lengthy meetings, a video conference, and numerous telephone conferences with opposing counsel," the parties finalized the class settlement. Plf.'s First Class Report at 8 (Dckt. No. 38). Class members were given notice of the proposed settlement pursuant to the Court's June 30, 1995 Order (Dckt. No. 36), and had ninety (90) days to file objections to the settlement or to "opt out" from the class. Plaintiff's counsel reports that many individuals visited or telephoned their offices to inform themselves about their rights under the settlement. At the end of the class notice period, no one objected to the settlement and only one person, Ms. Maria Solis Lopez, exercised her right to "opt out" of the class.

Plaintiff's counsel states that Ms. Murillo, the class representative, has authorized the proposed settlement. Moreover, counsel for Ms. Murillo and Texas Rural Legal Aid, Inc. staff members report that they have personally consulted with a number of class members who visited or called the Texas Rural Legal Aid office. According to counsel, these class members are also satisfied with the settlement. Plf.'s First Class Report at 6 (Dckt. No. 29).

Under the settlement, the class members will receive a generous amount of damages for the labor law violations allegedly perpetrated by Defendants. At a hearing held on January 9, 1995, Plaintiff's counsel estimated at $75,000.00 the total amount of damages to be paid directly to the class members. In addition, Defendants have agreed to establish a $10,000.00 contingency fund which will be administered by Plaintiff's counsel. See Consent Decree ¶¶ 36–39 at page 19. This fund will pay monies to any member of subclasses A, B, or C who has not been identified to date through some possible error or oversight on the part of Texas Rural Legal Aid, Inc. or the Defendants, but whose name is recorded in the Defendants' records. Furthermore, Defendants will pay to the Internal Revenue Service both the employer's and employees' share of the social security withholding tax for all class members and will also correct the workers' social security accounts to reflect the true number of credits earned. Importantly, Defendants also agree to change their employment practices to comply with federal labor laws. These changes will ensure against any future misclassification of workers as independent contractors and will benefit other farm workers at Texas A & M's experiment stations.

Plaintiff Murillo is represented by Kay E. Drought and Joaquin Amaya Jr., attorneys from Texas Rural Legal Aid, Inc. who have extensive experience with farmworker litigation and class action suits. Moreover, Ms. Drought and Mr. Amaya report that they were assisted by experienced litigators throughout the litigation and during the settlement negotiations.

The recommendation by Plaintiff's counsel and the good faith bargaining between the parties also militates heavily in favor of approving the settlement. "Courts have consistently refused to substitute their business judgment for that of counsel, absent evidence of fraud or overreaching ..." *McNary*, 76 F.R.D. at 649 (citation omitted). The Court finds neither fraud nor collusion in this case.

The proposed settlement provides substantial monetary benefits to the class members for their statutory injuries and represents the best possible recovery for class members. As noted above, the class members allege that Defendants failed to pay the federally-mandated minimum wage, the social security excise tax, and a special social security benefit afforded to Texas public employees. Although Defendants never answered the complaint, Plaintiff's counsel stated that during negotiations Defendants raised two defenses which might have prolonged the litigation. Specifically, Defendants maintained that Plaintiff's allegations were barred by the principle of sovereign immunity and 29 U.S.C. § 1803(a)(3)(C). Although *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), might illuminate the sovereign immunity issue, Plaintiff's counsel admitted that the educational institution exemption to

the AWPA, 29 U.S.C. § 1803(a)(3)(C), would present a legal issue of first impression under the facts of this case.

The Court finds that by settling, the parties have conserved substantial time and expense that would have been required had the case gone to trial. Moreover, by settling, the class members have avoided a much longer wait before they receive any monies.

Defendants, Texas A & M University System and Dr. Edward A. Hiler, Director of the Texas Agricultural Experiment Station, contest all of Plaintiff's allegations in their entirety. Nonetheless, Defendants have agreed to settle this suit to avoid the expense, inconvenience and time that litigation entails without admitting liability.

Defendants have also agreed to pay Plaintiff's counsel $30,000.00 for attorneys' fees. At the January 9, 1996 hearing, Plaintiff's counsel stated that almost four hundred (400) hours have been committed to this class action. Plaintiff's counsel expects to dedicate seventy-five (75) more hours administering the settlement. In addition, Plaintiff's counsel reports that they engaged the services of two tax attorneys and a certified public accountant to assist them in resolving the Plaintiff's complex tax problems. The Court finds that the sum of $30,000.00 represents fair and reasonable attorneys' fees.

The parties approve this Consent Decree for a determination on the merits and for the considerations specifically set forth herein, the adequacy and sufficiency of which they acknowledge.

THE COURT THEREFORE enters this Consent Decree:

## CLASS CERTIFICATION

1. The Court has determined that a class action lawsuit is the best method of handling the claims brought by Plaintiff Murillo.

2. Plaintiff's claims may be maintained as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure and 29 U.S.C. § 216 on behalf of all agricultural workers who were employed by the Defendants during some part of the period from July 2, 1990 to July 21, 1993.

3. Defendants covenant that after July 21, 1993, they did not treat any field laborer as an independent contractor.

4. The class members entitled to participate in this settlement consist of three classes of individuals, defined in paragraph 8.

5. Plaintiff Berene Murillo is qualified to serve as a class representative.

6. Counsel for Plaintiff Murillo, Texas Rural Legal Aid, Inc., is qualified to serve as class counsel.

7. Plaintiff and the class members are entitled to the classwide injunctive and declaratory relief set forth in this Agreed Class Action Consent Decree.

## CLASS

8. The Class is composed of individuals who worked for the Texas Agricultural Experiment Station from July 2, 1990 to July 21, 1993. The Class consists of the following:

  a. SubClass A consists of 286 individuals misclassified as independent contractors by the Defendants. However, at her request, Maria Solis Lopez is excluded from this class.

  b. SubClass B consists of 129 individuals who worked in the pecan harvest/cotton hoe hand crews in the El Paso and Pecos stations under the supervision of farm labor contractors Mario Garcia, Waldo Garcia, Sonya Garcia, and/or Tomas Salgado.

  c. SubClass C consists of twenty-three individuals who worked at the agricultural experiment stations and are identified in Plaintiff's Second Class Report (Dckt. No. 40).

## OPT–OUT CLASS NOTICE MECHANISM

9. Members of Subclass A with valid addresses received, via First Class U.S. Mail, a notice of the proposed settlement. The notice informed the class member of the right to "opt-out" of the case, and the right to object to the settlement. Any class member who did not exercise the right to "opt-out" of the case was deemed to remain a class member. Only one such person, Ms. Maria Soliz

Lopez, exercised her right to "opt-out" of the class. She is listed as individual # 53 on the list of Subclass A members found in Exhibit D of Plaintiff's Agreed Motion for Approval of Class Settlement Notice (Dckt. No. 34).

10. Members of Subclass B with valid addresses received, via First Class U.S. Mail, a notice of the proposed settlement. The notice informed the class member of the right to "opt-out" of the case, and the right to object to the settlement. Any class member who did not exercise the right to "opt-out" of the case was deemed to remain a class member.

## OPT–IN CLASS NOTICE MECHANISM

11. SubClass C members were notified of the settlement via radio and newspaper in and around the area of each agricultural experiment station which employed large numbers of workers. Upon request, notice of the settlement was sent via First Class U.S. Mail informing the claimant of the right to "opt-in" to the settlement by signing a proof-of-claim form under oath which states:

(1) Name;

(2) Social Security Number;

(3) Birth Date;

(4) Address;

(5) Agricultural Experiment Station where employed;

(6) Supervisor;

(7) Employment Dates;

(8) Employment Duties;

(9) Name of any co-workers;

(10) Name of co-worker whose pay receipt reflects claimants' wages; and

(11) Amount of money paid.

12. Twenty-three proof-of-claim forms were filed within ninety (90) days from the class notice date. No claims were received after that date. Plaintiff's counsel sent, via certified mail, return receipt requested, the twenty-three proof-of-claim forms to Defendants' counsel.

13. Defendants had thirty (30) days from their receipt of the proof-of-claim forms to review and object to any proof of claim. After reviewing the claim forms, Defendants did not object. Therefore, these twenty-three proof-of-claim forms are approved for payment according to the terms of this Agreed Consent Decree.

## DAMAGES UNDER FAIR LABOR STANDARDS ACT

14. The Defendants shall pay each member of SubClass A twenty two and $^{95}\!/_{100}$ percent (22.95%) of the member's gross pay from July 2, 1990 to July 21, 1993.

15. The Defendants shall pay each member of SubClass B eight and $^{78}\!/_{100}$ percent (8.78%) of the member's gross pay from July 2, 1990 to July 21, 1993.

16. The Defendants shall pay each member of SubClass C twenty two and $^{95}\!/_{100}$ percent (22.95%) of the member's gross pay from July 2, 1990 to July 21, 1993.

## DAMAGES FOR LOSS OF UNEMPLOYMENT BENEFITS

17. The Defendants shall pay each class member the sum of one hundred twenty dollars and 00/100 cents ($120.00) as compensation for failure to properly report income earned at an experiment station, and for the resulting alleged loss of unemployment benefits.

## SOCIAL SECURITY ADMINISTRATION AND INTERNAL REVENUE SERVICE

18. For each year covered by this lawsuit, the Defendants will file with the Social Security Administration a Form W–3c and for each class member a Statement of Corrected Income and Tax Amounts, Form W–2c, reflecting as "social security withheld" seven and $^{65}\!/_{100}$ percent (7.65%) of wages shown thereon. The seven and $^{65}\!/_{100}$ percent (7.65%) of wages are to be paid to the Internal Revenue Service pursuant to paragraph 20, infra. Defendants will issue a copy of each corrected W–2c form to the class member to whom it pertains.

19. The Defendants will file a supplemental tax Form 943 for each year covered by this lawsuit, which reflects payment of at least

the employee's share of the social security payments for each class member for such years, including those payments made pursuant to paragraph 20, infra. The Defendants will attach to each supplemental tax Form 943 an itemization of the employee's share of social security taxes paid for each class member, including each class member's social security number where available. The tax Form 943 will state that the Defendants have already settled their obligation to pay the employer share of FICA with the IRS.

20. The Defendants will pay to the IRS on behalf of each class member, for each of the years covered by this lawsuit, FICA tax equal to seven and $^{65}\!/_{100}$ percent (7.65%) of each class member's gross wages as the employee's share, in addition to making their own arrangements with the IRS to settle their duty to pay the employer's share. The Defendants will deposit funds for each class member's employee's share of FICA at the same time that the supplemental tax Form 943s are filed with the IRS. These sums are separate and in addition to sums payable to the claimants under paragraphs 14 through 17.

21. The Defendants will provide Texas Rural Legal Aid, Inc. documentary proof of compliance with paragraphs 18 through 20 within sixty (60) days of the date this Consent Decree is entered. The Defendants will mail documentary proof to Texas Rural Legal Aid, Inc., Farm Worker Division, Joaquin Amaya, Jr., Attorney, Post Office Box 1658, Plainview, Texas 79072. The documentary proof will include copies of each Form W–3c, each corrected Form W–2c, each supplemental tax Form 943 with attached itemization, and a copy of the deposit of funds required by paragraph 20, supra.

## TEXAS EMPLOYMENT COMMISSION

22. Defendants will report to the Texas Employment Commission ("TEC") wages paid to class members in the eighteen (18) months prior to the execution date of this Consent Decree.

23. The Defendants will provide Texas Rural Legal Aid, Inc. documentary proof of compliance with paragraph 22 within sixty (60) days of the date this Consent Decree is entered. The Defendants will mail documentary proof to Texas Rural Legal Aid, Inc., Farm Worker Division, Joaquin Amaya, Jr., Attorney, Post Office Box 1658, Plainview, Texas 79072.

## DISTRIBUTION OF MONETARY AWARD

24. Defendants shall pay the Total Settlement Amount no later than thirty (30) days after entry of this Consent Decree by the Court, by delivering a check payable to "Texas Rural Legal Aid Client Trust Account" to the attention of Texas Rural Legal Aid, Inc., Farm Worker Division, Joaquin Amaya, Jr., Attorney, Post Office Box 1658, Plainview, Texas 79072. The "Total Settlement Amount" consists of damages for Fair Labor Standards Act violations described in paragraphs 14 through 16 above, plus $120.00 per class member as damages for violations of the state unemployment laws as described in paragraph 17 above.

25. Upon payment of the Total Settlement Amount by Defendants, Texas Rural Legal Aid, Inc. shall disburse to each member of SubClasses A and B who has not "opted out," and whose class notice was not returned as undeliverable, her share of the Total Settlement Amount via certified mail, return receipt requested, delivery restricted to addressee.

26. Upon payment of the Total Settlement Amount by Defendants, Texas Rural Legal Aid, Inc. shall disburse to each member of SubClass C who has "opted in" to the settlement *and* whose claim has been approved by the Defendants, her share of the Total Settlement Amount. These settlement checks shall be sent via certified mail, return receipt requested, delivery restricted to addressee.

27. Texas Rural Legal Aid, Inc. agrees to use its best efforts to locate each class member entitled to participate in the settlement until June 15, 1996, using media and other outreach devices to locate individuals whose addresses are not contained in Defendants' records or whose mail is returned as undeliverable.

28. After June 15, 1996, all monies not distributed and all monies distributed but not claimed, shall be redistributed to the class representative and class members as follows:

a. The first Two Thousand Dollars and 00/100 Cents ($2,000.00) will be distributed to Berene Murillo, Class Representative;

b. Any additional undistributed monies will be distributed on a *pro rata* basis to all class members whose settlement checks were claimed and sent by June 15, 1996; and

c. Any monies returned to Texas Rural Legal Aid, Inc. as undeliverable after the second distribution will be paid to Texas Rural Legal Aid, Inc. as compensation for the cost of administering this settlement.

## FUTURE COMPLIANCE WITH THE FEDERAL LABOR LAWS

29. The Defendants in the future shall treat all migrant and seasonal agricultural workers as employees for all purposes, including but not limited to the Fair Labor Standards Act, the Federal Insurance Contributions Act, the Texas Unemployment Compensation Law, the Texas Workers Compensation Law, and the Texas Wage and Hour Law. Defendants shall make all required reports and payments under these laws.

30. Defendants shall, with respect to each employee:

a. Make, keep, and preserve records for three years of the following information:

1) the basis on which wages are paid;

2) the number of piecework units earned, if paid on a piecework basis;

3) the number of hours worked;

4) the total pay period earnings;

5) the specific sums withheld and the purpose of each sum withheld; and

6) the net pay.

b. Provide each agricultural worker for each pay period, an itemized written statement of the following information:

1) the basis on which wages are paid;

2) the number of piecework units earned, if paid on a piecework basis;

3) the number of hours worked;

4) the total pay period earnings;

5) the specific sums withheld and the purpose of each sum withheld; and

6) the net pay.

c. Disclose in writing to each migrant agricultural worker the following information:

1) the place of employment;

2) the wage rates to be paid;

3) the crops and kinds of activities on which the worker may be employed;

4) the period of employment; and

5) any other employee benefit to be provided, if any, and any cost to be charged for each benefit.

## TRAINING AT AGRICULTURAL EXPERIMENT STATIONS

31. Defendants shall distribute a pamphlet covering the issues raised by this lawsuit to all visitors at the Texas Agricultural Experiment Station field day presentations for one (1) year after the entry date of this Consent Decree. A true and correct copy of the text of that pamphlet is attached hereto as Exhibit 1.

32. The pamphlet will be available at all Agricultural Experiment Stations for one year following entry of this Consent Decree.

33. Defendants shall pay the costs of producing and distributing the pamphlet.

## CLASS NOTICE COSTS

34. Defendants, as part of the settlement, have paid Texas Rural Legal Aid, Inc. twenty thousand dollars and 00/100 cents ($20,-000.00) for class notice costs.

35. Any amount of the twenty thousand dollars and 00/100 cents ($20,000.00) not used to fund class notices will be retained by Texas Rural Legal Aid, Inc. as compensation for other costs of administering this settlement.

## CONTINGENCY FUND

36. Apart from all sums provided elsewhere in this Consent Decree, Defendants will pay an additional ten thousand dollars and 00/100

cents ($10,000.00) as a contingency fund. The purpose of this fund is to allow Texas Rural Legal Aid, Inc. to compensate a legitimate claimant of any subclass who has not yet been identified to date through some possible error or oversight on the part of Texas Rural Legal Aid, Inc. or the Defendants, but whose name is recorded in the Defendants' records.

37. This ten thousand dollars and 00/100 cents ($10,000.00) will be paid no later than thirty (30) days after entry of this Consent Decree by the Court, by delivering a check payable to "Texas Rural Legal Aid Client Trust Account" to the attention of Texas Rural Legal Aid, Inc., Farm Worker Division, Joaquin Amaya, Jr., Attorney, 114 East 7th Street, Second Floor, Post Office Box 1658, Plainview, Texas 79072.

39. On September 15, 1996, any amount of the ten thousand dollars and 00/100 cents ($10,000.00) not used to pay claimants will be retained by Texas Rural Legal Aid, Inc. as added compensation for administering this settlement.

## ATTORNEYS' FEES

40. The Defendants have paid Texas Rural Legal Aid, Inc. thirty thousand dollars and 00/100 cents ($30,000.00) as attorneys' fees. These monies are currently being held in a trust account by Texas Rural Legal Aid, Inc., attorneys for plaintiffs.

41. Within twenty (20) days after the entry of this Consent Decree by the Court, Texas Rural Legal Aid, Inc. shall provide the Defendants with an itemized statement of attorneys' fees. Ten (10) days thereafter, Texas Rural Legal Aid, Inc. shall be entitled to collect its attorneys' fees from the trust account.

## GENERAL PROVISIONS

42. This Consent Decree is made for the limited purpose of settling all claims in this lawsuit. It is not an admission of any kind on the part of any party to this lawsuit.

43. This Consent Decree shall be binding upon and shall inure to the benefit of each of the parties hereto and their respective heirs, personal representatives, successors, and assigns, and to all persons acting in concert with them.

44. Payment of the settlement monies described above has been approved by the Office of the Governor and the Comptroller of the State of Texas.

45. With respect to paragraphs 29 through 33, this Consent Decree shall terminate in five (5) years from the date it is signed by the Court.

47. This decree ends this litigation. All relief not expressly granted is denied.

APPROVED PURSUANT to Rule 23(e), Fed.R.Civ.P.

## EXHIBIT 1

### Pamphlet Page 1

### ATTENTION ALL FARMERS!

### TREATING FARM WORKERS AS "CONTRACT LABOR" IS A VIOLATION OF THE LAW AND CAN RESULT IN BIG PENALTIES!

Are you aware that:

1. You must pay farm workers at least the minimum wage of $4.25 per hour;

2. You must give pay receipts to farm workers;

3. You must pay social security taxes for farm workers;

4. You must pay unemployment taxes for farm workers; and

5. You must give farm workers a tax form W–2 and not a tax form 1099.

If not, you are risking legal trouble! A farm laborer is not in business for himself—he is an employee, *not* an independent contractor.

### FARM WORKERS ARE EMPLOYEES, NOT "CONTRACT LABOR"

A farm worker or field laborer is an employee even if he works for a short period harvesting, hoeing or doing other farm work. Even if a farm worker is paid a piece rate or by the acre, he is an employee, not "contract labor" or an "independent contractor."

452

EXHIBIT 1—Continued

Farmers and other employers who treat farm workers as independent contractors are breaking the law because they are shifting the employer responsibilities to the farm workers. For example, farm workers must pay the social security taxes and unemployment compensation taxes which are legally the responsibility of the employer. This practice violates the Migrant and Seasonal Agricultural Worker Protection Act, the Fair Labor Standards Act, the Federal Insurance Contribution Act, the Federal Unemployment Tax Act, the Texas Unemployment Compensation Act, and the Texas Workers' Compensation Insurance Law.

Farmers who try to save money by treating farm workers as independent contractors, will find that this practice costs them more money in the long run. If the farmer is investigated or sued, penalties may include back wages, other damages paid to the workers, court costs, and attorney fees. Further, an employer's failure to report all wages earned to the Internal Revenue Service means that penalties and interest payments are compounded daily.

## USING FARM LABOR CONTRACTORS DOES NOT SHIELD FARMERS

Often farmers and other agricultural employers think that using a farm labor contractor relieves them of employer responsibilities. This assumption is wrong.

When a farm labor contractor provides farm workers to a farmer, *both* the labor contractor and the farmer employ the workers. The farmer is jointly responsible for keeping accurate wage and hour records, paying the minimum wage, and complying with all Federal and State laws. If the farmer relies on the farm labor contractor, and the contractor violates the workers' rights, then *both* the farmer and the contractor can be sued and held liable for damages.

## AGENCIES AND ORGANIZATIONS READY TO ENFORCE THE LAWS

Federal and State agencies responsible for enforcing the employment and tax laws in-

EXHIBIT 1—Continued

clude the Internal Revenue Service, the Social Security Administration, the United States Department of Labor, and the Texas Employment Commission. Other organizations that investigate and file lawsuits on behalf of farm workers are Texas Rural Legal Aid, the Mexican American Legal Defense and Education Fund, and the National Association for the Advancement of Colored People.

## SIMPLE STEPS TO AVOID LEGAL PROBLEMS

To avoid legal problems an agricultural employer should:

1. Pay each worker at least the minimum wage of $4.25 per hour, whether payment is by the hour or on a piece rate basis;

2. Give each worker a pay receipt showing the wages earned, hours worked, and all deductions;

3. If using a farm labor contractor, make sure the contractor has a valid, up to date registration with the U.S. Department of Labor *and* is authorized to perform any housing or transportation functions required by the job;

4. Pay social security taxes for all workers;

5. Pay unemployment taxes for all workers;

6. Give each worker an IRS Form W-2 at the end of the year; and

7. Before migrant workers begin working, provide them with a "disclosure statement" telling them important things about the job. The United States Department of Labor has disclosure statement forms available.

## FOR MORE INFORMATION, CONTACT:

1. The United States Department of Labor concerning compliance with federal labor laws;

2. The Internal Revenue Service concerning compliance with tax laws; or

EXHIBIT 1—Continued

3. The Texas Employment Commission concerning state employer responsibilities.