**David B. KUSNER**

v.

**FIRST PENNSYLVANIA
CORPORATION et al.**

Civ. A. No. 74–1552.

United States District Court,
E. D. Pennsylvania.

May 27, 1977.

Mitchell A. Kramer, Philadelphia, Pa., for David B. Kusner.

Edward F. Mannino, Philadelphia, Pa., for First Penna. Corp., Associated Mortgage Companies, Inc., John R. Bunting, Ralph W. Ervin, Philip Zinman, Associated Advisers, Inc.

Henry T. Reath, Philadelphia, Pa., for M. Todd Cooke, Edmund N. Bacon, Kenneth S. Sweet, Jr., Richard W. Baker, Jr., Daniel S. Ahearn.

Robert S. Ryan, Philadelphia, Pa., for First Penna. Mortg. Trust.

Arnold Levin, Philadelphia, Pa., for Harold E. Kohn, intervenor-objector.

## OPINION

LUONGO, District Judge.

Before me for approval pursuant to Fed. R.Civ.P. 23(e) is the proposed settlement agreement which would terminate the instant class action litigation. Also before me are certain objections to the proposed settlement.

Plaintiff is a holder of convertible debentures in The First Pennsylvania Mortgage Trust (hereinafter the Trust), a real estate investment trust ("REIT"). He instituted suit against the Trust, its eight trustees, and certain allegedly related corporations for alleged violations of the securities laws and the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b–1 et seq. Originally the Complaint alleged four causes of action; the first three were brought as derivative claims and the fourth as a class action on behalf of the Trust's debenture holders. On defendants' motion, all four counts of the Complaint were dismissed. The opinion granting the motion sets forth the facts of the case and is reported at 395 F.Supp. 276. Plaintiff appealed only the dismissal of the fourth count, the class action count. The Court of Appeals for the Third Circuit reversed the dismissal of the fourth count. *Kusner v. First Pennsylvania Corporation,* 531 F.2d 1234 (3d Cir. 1976).

On May 17, 1976, shortly after the ruling by the Court of Appeals, the case was transferred to my docket. Thereafter the parties entered into a proposed settlement agreement. The proposed settlement provided for a reduction of the price of converting the debentures to common stock of the Trust from $26.00 per share to $8.65 per share; that the defendants pay plaintiff's counsel's reasonable attorney fees and disbursements as approved by this court; [1] and, finally, that the Trust pay the cost of notice to the class, including "reasonable expenses of brokerage firms' notification to their customers; skip-tracing, if any; rental of lockbox; and other similar expenses."

On February 16, 1977, I entered an order setting a hearing for May 6, 1977 "for the purpose of determining whether the proposed settlement and compromise of this action, as provided in the Agreement, is fair, reasonable and adequate and should be approved by the Court . . . ." By the same order, I certified, for purposes of settlement only, as the plaintiff class:

"Each and every present holder of First Pennsylvania Mortgage Trust (herein "Trust") 6¾% convertible subordinated debentures which were originally issued under a prospectus of the Trust dated August 19, 1971."

The class members number approximately 1,000 and hold approximately $7,330,000 in

---

1. At the May 6, 1977 settlement hearing (*see infra*) counsel for defendants stated that the Trust would pay 50% of the attorney fees awarded, and the corporate defendants would pay the remaining 50%.

convertible debentures. On February 28, 1977, "Notice of Pendency of Class Action, and Notice of Proposed Settlement of Class Action" was mailed to each member of the class. The Notice included instructions to the class members of their right to opt out of the proposed settlement at any time up to April 21, 1977. At the time of the hearing on May 6 two members, holders of approximately $400,000 of debentures, had served notice of their desire to be excluded from the proposed settlement. By Order entered on May 6, 1977 they have been excluded from the settlement class.

At the May 6, 1977 hearing on the proposed settlement the court was advised that the only objection to the proposed settlement was that of Harold Kohn. Kohn is a stockholder of defendant First Pennsylvania Mortgage Trust, but is himself neither a party to the instant suit nor a member of the proposed class. He opposes approval of the proposed settlement on the ground that the settlement is detrimental to the interests of common stockholders of the defendant Trust.[2]

I have reviewed the proposed settlement agreement, and have carefully considered the parties' arguments in support of the proposed settlement as submitted in Plaintiff's Memorandum in Support of Settlement and at the hearing on May 6, 1977. I have concluded that the proposed settlement is fair and should be approved as set forth in the accompanying Order. This memorandum briefly sets forth my reasons for concluding the proposed settlement is fair and should be approved. I will also discuss my reasons for not permitting Kohn to intervene and object to the proposed settlement.

I. *Fairness of the Proposed Settlement*

■ The determination of whether a settlement agreement in a class action is fair and reasonable involves balancing of many factors present in the litigation.

" 'The most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.' " *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 455 (2d Cir. 1974). Other factors to be considered include:

"(1) the complexity, expense and likely duration of the litigation . . .; (2) the reaction of the class to the settlement . . .; (3) the stage of the proceedings and the amount of discovery completed . . .; (4) the risks of establishing liability . . .; (5) the risks of establishing damages . . .; (6) the risks of maintaining the class action through trial . . .; (7) the ability of the defendants to withstand a greater judgment . .; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . .; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . .." *City of Detroit v. Grinnell Corp., supra* at 463.

While the number of factors to be considered is many, the decision on the proposed settlement should not be converted into an abbreviated trial on the merits. *Newman v. Stein,* 464 F.2d 689 (2d Cir.), *cert. denied,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972); *State of West Virginia v. Chas. Pfizer & Co.,* 314 F.Supp. 710 (S.D.N.Y.1970), *aff'd* 440 F.2d 1079 (2d Cir. 1971). To that end, "[t]he opinion and judgment of experienced counsel, whose labors produced the settlement, should also receive due consideration." *In re National Student Marketing Litigation,* 68 F.R.D. 151, 155 (D.D.C.1974). *See also Helfand v. New America Fund, Inc.,* 64 F.R.D. 86, 90 (E.D.Pa.1974).

In light of the above factors, the following considerations have been presented to the Court to justify the proposed terms of the settlement. First, plaintiff's claims of

---

2. Kohn filed interrogatories and a motion for production of documents. At the May 6, 1977 hearing I informed Kohn's counsel that he would have one additional week to present whatever material he wanted in support of his motions or on the merits. By letter dated May 13, 1977, Kohn's attorney advised me that "all matters relevant have been presented to the Court." Kohn's discovery motions are, therefore, moot.

violations of the securities laws require proof of several facts that are not readily established, including whether the alleged failures to disclose were of events that actually occurred and whether the events were material. *See Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Plaintiffs would also have to prove that excessive prices were paid by the investment advisers for real estate purchased for the Trust, and that they charged excessive fees. Establishing "excessiveness" would require the testimony of experts, which would certainly be controverted by the testimony of other experts. Finally, even if plaintiff established that the omissions occurred and that they were material, he would also have to establish that each of the defendants acted with the requisite state of mind. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

The second significant factor that weighed in plaintiff's acceptance of the proposed settlement is the economic condition of the real estate industry and other REITs. The vast losses that have been incurred by REITs and other segments of the real estate industry over the past several years could well cause the fact finder to conclude, even if violations of the securities acts were established, that the plaintiff's losses were not the result of defendants' actions. And if causation were established, proving the amount of damages would present another major hurdle; how much would the debentures be worth but for the defendants' misconduct?

The third major consideration in accepting the proposed settlement was the plaintiff's acute awareness of the financial plight of the Trust. (The Trust lost nearly 19 million dollars in 1975, over 10% of its total assets.) Plaintiff wanted to recover his damages, but not at the expense of placing the Trust, of which he is a creditor, in such financial straits as would threaten its continued existence and functioning. The debentures sued upon here are subordinated to the loans of several commercial banks, and forcing the Trust into bankruptcy would not entitle the debenture holders to the majority of the Trust's assets.

In sum, the plaintiff is faced with very substantial hurdles to prevailing in his law suit, and any substantial verdict would have been of limited value to him because of the financial condition of the Trust. Thus a settlement which will apparently produce no immediate tangible benefit to the plaintiff and which will produce a benefit in the future only if the Trust recovers its financial viability can be justified. Other considerations also support the settlement. No members of a presumably informed and sophisticated class have objected to the settlement. The suit, although filed some three years ago, has not proceeded far with discovery because of the motion to dismiss the appeal, and thus the settlement will avoid substantial investment and the attendant risks of proceeding. From the defendants' point of view, not only have they saved the costs of continued litigation, but the Trust and the corporate defendants have incurred no immediate financial losses except for the payment of expenses and counsel fees to be awarded to plaintiff's attorney.

I conclude that the chances of plaintiff's eventual success on the merits, of his proving damages, and of his obtaining a judgment that produces a substantial financial benefit to him balanced against the terms of the proposed settlement reflect a fair and reasonable settlement. The settlement may in the end prove to be of little or no value to plaintiff if the Trust does not become financially successful, but that very lack of success to date and the problems of proof facing plaintiff make it equally likely, in my view, that if he proceeded with this litigation to its costly end, he might recover nothing in that case either.

## II. *Intervention of Stockholder Kohn*

The would-be intervenor-objector Kohn is the owner of 1,000 shares of common stock of the First Pennsylvania Mortgage Trust. He purchased the shares between June 2 and June 4, 1975 (after the instant suit had been instituted) at prices between $3 and

$3.38 per share. He seeks to intervene and object to the proposed settlement on the ground that:

"The settlement is detrimental to the interests of the common stockholders, including the intervenor-objector, in that the value of the common stock will be diluted by the reduction of the conversion rate of the debenture holders, and the payment by the corporation of the plaintiffs' attorneys' fees and costs in connection with the instant action."

Objections to the Proposed Settlement by Intervenor-Objector Harold E. Kohn at ¶ 7.

The defendants *and* the plaintiff object to Kohn's intervention on grounds that he lacks standing to intervene, and that he, individually, is not injured by the proposed settlement. Kohn relies on *In re Pittsburgh and Lake Erie Railroad Company Securities and Antitrust Litigation,* 543 F.2d 1058 (3d Cir. 1976), to support his standing to intervene. I have concluded that *In re Pittsburgh, supra,* is readily distinguishable, and Kohn lacks standing to intervene, and that in any event he, individually, will not be detrimentally affected by the proposed settlement.

Federal Rule of Civil Procedure 23(d) provides in part:

"In the conduct of actions to which this rule applies, the court may make appropriate orders: . . . (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given . . . of the opportunity of members . .. . to intervene and present claims or defenses . . .."

The explicit language of Rule 23(d)(2) limits intervention to members of the class.[3] Kohn holds no convertible debentures of the Trust, and thus is not a member of the plaintiff class. Kohn has cited no case where a non-class member has been permitted to intervene under Rule 23(d)(2). Limitation of intervention to class members is so

accepted that the rule is assumed and not discussed. *See* 3B Moore's Federal Practice ¶¶ 23.80[5], 23.90.

*In re Pittsburgh and Lake Erie Railroad Company Securities and Antitrust Litigation, supra,* provides no exception to the rule that intervention is limited to class members. In that case, the Court of Appeals for the Third Circuit ruled that the trustee of certain stock indentured to the trustee as security for bonds issued by the owner of the stock (Penn Central Transportation Company) had standing to intervene in a series of class shareholder derivative suits brought by minority stockholders of the stock against the corporation and certain of its officers. The trustee sought to intervene on behalf of the bondholders to object to settlement agreements. Relying on the rule that a pledgee of stock has the same right to protect his stockholder's equity as does a pledgor of the stock, the Court of Appeals held that the pledgee of the stock had the same right to intervene in a stockholder's derivative action as any other stockholder. 543 F.2d at 1067.

In the instant suit Kohn has no interest in the convertible debentures which are the basis for the plaintiff class suit. If the Court of Appeals had permitted a bondholder of the corporation being sued or a bondholder of the pledgee owner of the stock (Penn Central) to intervene, then the situation would be more analogous to the instant case, although the reverse. But the connection between the would-be intervenor in *In re Pittsburgh* and the plaintiff class in the suit in which he sought to intervene was much more direct. The intervenor there held a direct interest in the instrument which the plaintiff sued upon: the stock of the corporation. Here Kohn has no interest in the instrument sued upon, the convertible debentures, but only an interest in the Trust sued. Put most simply, the trustee in *In re Pittsburgh* stood in the shoes of a member of the class (stockholder); Kohn has but an interest in the defendant Trust.

---

**3.** Further, evidence that Rule 23 contemplates intervention by class members alone is subsection (e) which provides for notice of compromise or dismissal of the suit only to class members.

■ Allowing Kohn to intervene to object to the proposed settlement would, in my view, set a very dangerous precedent. If Kohn were allowed to intervene on no other basis than his status as a stockholder of First Pennsylvania Mortgage Trust Company, then I would, in effect, be sanctioning the intervention of any stockholder in any suit in which the trust or corporation whose stock the stockholder owns is a party. The logical result of this would be that a corporation could not prosecute or settle any suit by or against it without obtaining the approval of every shareholder (and perhaps every holder of a debt instrument as well). Clearly the corporate entity was never intended to be so limited in its ability to make decisions and to act on them. *See Landy v. Federal Deposit Insurance Corp.,* 486 F.2d 139 (3d Cir. 1973), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974); *Swanson v. Traer,* 249 F.2d 854 (7th Cir. 1957); *Levin v. Mississippi River Corp.,* 59 F.R.D. 353 (S.D.N.Y.), *aff'd* 486 F.2d 1398 (2d Cir.), *cert. denied,* 414 U.S. 1112, 94 S.Ct. 843, 38 L.Ed.2d 739 (1973).

Kohn is not remediless if the officers of the Trust are acting improperly in settling the instant law suit under the proposed terms. Whatever rights he had as a stockholder for redress of improper actions of officers and directors of the Trust, he still has.

Even if Kohn had the right to intervene and object to the proposed settlement, he has alleged no injury which would justify upsetting the proposed settlement agreement. He alleges that the settlement will be detrimental to his interests because the reduction of the debenture conversion rate to $8.65 and the payment of plaintiff's attorney's fees will dilute the value of his stock.

■ In my view, the parties are correct in their position that so long as the conversion rate of the debentures into common stock is above the book value of the common stock, no dilution in the present stockholders' equity will occur. Under the proposed settlement, one share of common stock will be issued for each $8.65 of debt that is retired. At the time the proposed settlement was entered into, the book value of each share of the Trust's stock was $8.62 [4] (total worth of the Trust divided by total shares of common stock). Thus for each new share of stock that is issued, $8.65 of debt is eliminated, effectively increasing the equity of the Trust by that amount, and, therefore, creating sufficient new equity to cover the new stock without draining or diluting any equity from the existing shares of stock. Stated another way, each of the "settlement shares" results in the addition of $8.65 of equity to the Trust, which is three cents more equity per share than was in the Trust at the time the settlement was entered into. This three cents will be spread over all the shares, and thus the conversion will actually add to the equity of each share, not dilute it.

The payment of counsel fees from the Trust will admittedly reduce the total assets of the Trust. The pending law suit, however, also poses a real burden to the assets of the Trust. The decision of the Trust to settle the law suit rather than litigate it to a conclusion may or may not impose a greater cost on the Trust, but in either case the Trust would incur counsel fees. Although the fees from settlement might result in some extra cost to the Trust, the injury to the individual stockholders is too indirect, in my view, to work a definite dilution of the stockholders' equity. In any event, the injury to the Trust stockholders is not of the kind that should permit their intervention.

I conclude, therefore, that Kohn does not have standing to intervene in the instant class action settlement proceeding.

ORDER APPROVING SETTLEMENT OF CLASS ACTION AND DIRECTING ENTRY OF FINAL JUDGMENT AND FINAL JUDGMENT ORDER

AND NOW, this 27th day of May, 1977, (a) upon consideration of the Settlement

---

4. As of the date of the May 6, 1977 hearing, according to an affidavit filed with the court, the book value of the stock had declined to $7.25 per share.

Agreement dated January 27, 1977 by and between defendants and plaintiff ("Kusner Agreement") and plaintiff's memorandum in support thereof; (b) upon consideration of the evidence received and the arguments presented at the hearing held before this Court on May 6, 1977, which hearing was held pursuant to notice to the class as ordered by this Court; (c) upon this Court's evaluation of the proposed settlement in light of the applicable law, taking into account the risks arising out of the unsettled questions and issues of this action including, *inter alia,* determination of the size, definition and viability of the plaintiff class; the complexity of the factual and legal issues to be determined in this litigation; the risks of establishing liability; and the risks of establishing causation and amount of damage; (d) upon consideration of the fact that notice has been mailed to each member of the class bound hereby in accordance with the terms of this Court's orders of February 16, 1977, and no objections to the fairness and reasonableness of the settlement have been filed or submitted by any member of the class; and (e) upon consideration of the objections to the settlement raised by Harold E. Kohn, a shareholder of First Pennsylvania Mortgage Trust; IT IS HEREBY ORDERED THAT:

1. The Settlement set forth in the said Kusner Agreement which is attached as Exhibit A to this Court's Order of February 16, 1977 (docket number 69), is hereby found to be fair, reasonable, adequate and equitable to plaintiff and the members of the settlement class represented by plaintiff, and it is hereby approved pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2. The Kusner Agreement and the settlement terms proposed therein shall be, and hereby are, APPROVED;

3. All terms and provisions of the Kusner Agreement shall be carried out and consummated as provided therein, including, without limitation, the taking of such actions as may be appropriate on the effective date of the settlement, as defined in the Kusner Agreement, to cause the price at which the 6¾% convertible subordinated debentures of First Pennsylvania Mortgage Trust ("Trust") issued under a prospectus dated August 19, 1971, are convertible into shares of beneficial interest of the Trust, to be set at $8.65 per share;

4. The persons and entities of the plaintiff class who are bound by the settlement and this Order shall be and include each and every record, beneficial, or other holder of the Trust's 6¾% convertible subordinated debentures originally issued under a prospectus of the Trust dated August 19, 1971, who has been a holder on and after February 16, 1977, with the exception only of Jack L. Wolgin, holder of debentures in the total face value of $396,000 and Catherine M. and William Beadle, holders of debentures in the total face value of $5000, who are hereby found to be the only members of the plaintiff class who have properly requested exclusion pursuant to the terms of this Court's Order of February 16, 1977 and the accompanying Notice of Pendency of Class Action, and Notice of Proposed Settlement of Class Action;

5. This action is hereby DISMISSED finally, with prejudice, and on the merits against all defendants;

6. Any and all claims asserted, or which could have been asserted by plaintiff, or by any member of the plaintiff class not excluded under paragraph 4 hereof, against any defendant, or any officer, director, trustee, employee or agent thereof, arising out of, by reason of, or in connection with, the acts, events, occurrences, or transactions which have been referred to, or which could have been referred to, in the complaint in this action, are hereby satisfied, discharged and extinguished with prejudice, and any further prosecution or litigation thereof is expressly barred;

7. The parties are directed to implement the terms of the Kusner Agreement, subject to the terms and conditions thereof, and the Court retains all necessary jurisdiction over this matter to supervise the implementation of the settlement, including but not limited to the determination of an award to plaintiff's counsel for reasonable

attorneys fees and out of pocket disbursements, pursuant to the Kusner Agreement, and to insure that the purpose and intent of the Kusner Agreement are achieved;

8. In the event that defendants withdraw from the settlement because of the occurrence of any of the conditions which give rise to a right to withdraw under the Kusner Agreement, this Order shall be deemed vacated, without prejudice to the rights of any of the parties, and this Court shall retain jurisdiction over the action for trial.

9. Harold E. Kohn, as a shareholder of the Trust, lacks standing to object to the settlement approved hereby since he is neither a member of the settlement class nor sufficiently affected by the settlement to confer standing upon him to object to its terms.