**TRIST et al.**

v.

**FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF CHESTER et al.**

Civ. A. No. 72–1599.

United States District Court, E. D. Pennsylvania.

July 24, 1980.

See also, D.C., 89 F.R.D. 1, D.C., 89 F.R.D. 8.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

Plaintiffs seek final approval of the proposed settlement of this class action as required by Fed.R.Civ.P. 23(e). On February 15, 1980 notice of a hearing to consider objections to the settlement was mailed to the last known addresses of all class members, some 28,937 present and former mortgage holders in the greater Philadelphia area. The notice described the terms of the proposed settlement and informed class members of their right to file written objections and object orally at the hearing. The hearing took place on March 31, 1980. No one appeared to object, nor has anyone filed an objection with the court or the parties before or since the hearing.

Through long acquaintance I am familiar with these proceedings. The source of controversy is an "interest" charge once collected by the defendants from borrowers at settlement of home mortgage loans. The original complaint was filed on August 11, 1972, alleging claims under the National Bank Act, the Truth in Lending Act and state common law. The Bank Act claim was dismissed and the complaint amended to add an antitrust count. After I declined to take pendent jurisdiction over the state law claims, *Chevalier v. Baird Savings Ass'n*, 371 F.Supp. 1282 (E.D.Pa.1974), plaintiffs' counsel filed four separate class actions in the Court of Common Pleas for Philadelphia County to preserve the state claims. The state actions have now been consolidated with the federal action in this court for purposes of settlement.

The practice that forms the basis of these actions is described in my summary judgment opinion, reported at *Trist v. First Federal Savings & Loan Ass'n. of Chester*, 466 F.Supp. 578 (E.D.Pa.1979). Defendants are twenty savings and loan associations in the greater Philadelphia area. The anti-trust count alleged that defendants conspired in violation of the Sherman Act, 15 U.S.C. § 1, to charge borrowers an additional charge labeled some variant of "interest to the first payment" at the time of settlement. The Truth in Lending count alleged that since this charge was in fact not interest, it was mislabeled in violation of the disclosure requirements of 15 U.S.C. § 1601 *et seq.* and regulations promulgated thereunder. In an opinion reported at *Chevalier v. Baird Savings Ass'n*, 72 F.R.D. 140 (E.D. Pa.1976), I certified a plaintiff class for the antitrust count consisting of all borrowers from defendants who obtained conventional mortgages after January 1, 1968 on single-family homes where the alleged charge was made. A substantially smaller subset of the antitrust class limited to three defendants was certified for the Truth in Lending count. *Id.* at 151–58.

The state actions were brought against individual defendants as class actions limited to borrowers from four lenders. The state claims sounded in breach of contract, alleging that by virtue of the challenged practice defendants charged an effective interest rate higher than that stated in the mortgage documents.

The proposed settlement package consists of monetary compensation for past losses and non–monetary benefits to adjust for future losses. The sum total of benefits exclusive of interest, adjusted as of May 5, 1980 to reflect an accounting and audit, is $2,828,409.72. Included in this amount are funds intended to satisfy an award of counsel fees and expenses up to a maximum of 25% of the settlement. A separate fee petition has been submitted to the court.

### A. Antitrust Plaintiffs

Comparison of the settlement with the potential recovery requires choosing a measure of damages, itself a matter of some controversy between the parties. For purposes of evaluating the settlement, I agree with class counsel that the defendants' basic model of damages most likely would have gone to the jury. That model assumes that the economic harm resulting

from the alleged practice was the loss of the use of one level monthly payment over the life of the mortgage loan; hence, the measure of damages before trebling is the amount of the monthly payment times the Pennsylvania legal rate (6% annually or .05% monthly) times the number of payments. An additional element of damages, included in the settlement but disputed by defendants, is a refund of interest for that part of the month of repayment after the loan is repaid.

Under the terms of the settlement, antitrust plaintiffs with open mortgages may delay their monthly payment up to the last business day of the month, where the stated due date is the first of the month, with no additional charge of interest or penalty over the life of the loan. In effect these plaintiffs are permitted a one month moratorium on payments. By deferring payment for one month they may recoup use of the monthly payment over the remainder of the loan. This benefit represents, according to class counsel, a 100% recovery of the future economic injury to these class members gauged by the likely measure of damages, but not accounting for treble damages. The value of this benefit, equivalent to the total present value of the delays in payments not yet made by these class members, is calculated to be $1,615,569 by plaintiffs' expert, Dr. Murray Gerstenhaber, Professor of Mathematics at the University of Pennsylvania. The calculation is supported by Dr. Gerstenhaber's sworn affidavit and a statistical exhibit compiling pertinent data for the 17,327 plaintiffs in this category. Plaintiffs with paid–off loans have no equivalent injury.

For their past damages, plaintiffs with open loans receive 2% annual interest on the amount of their level monthly payment from their first payment until December 31, 1979. The amount due is $402,859.54 to be paid as a credit on the principal balance of the loans. This figure represents one–third of the claimed loss. Plaintiffs with paid–off loans are to be paid $164,284.43 for this past loss measured by the same formula.

Antitrust class members with open loans are guaranteed that in the month their loan is repaid they will pay interest only for the days the loan is outstanding. Exact calculation of the value of this benefit is impossible, but Dr. Gerstenhaber conservatively estimates a value of $119,118, assuming an average mid–month pay–off date. Plaintiffs with paid–off mortgages are to be paid $67,942.75 for this element representing a 100% recovery of loss. In addition to all of the above, the settlement creates a fund of $300,000 plus interest at 9% from January 1, 1980 towards payment of counsel fees and reimbursement of expenses awarded by the court, with the remainder to be distributed per capita to antitrust plaintiffs with open loans.

The district court has considerable discretion in determining whether to approve settlement of a class action. *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir. 1974). Some of the factors relevant to determining the fairness of a settlement were listed by the Second Circuit in *City of Detroit v. Grinnel Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) quoted in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) as follows:

> (1) the complexity, expense and likely duration of the litigation . . . (2) the reaction of the class to the settlement . . . (3) the stage of the proceedings and the amount of discovery completed . . . (4) the risks of establishing liability . . . (5) the risks of establishing damages . . . (6) the risks of maintaining the class action through the trial . . . (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . .

The most obvious factor favoring the proposed settlement is the lack of any objection from the class. Silence does not always signify universal approval but in this case it indicates more than apathy. The notice of the proposed settlement was

complete and clear. More than twenty class members responded to the settlement by writing to the Clerk of Court with inquiries, but none objected. By comparison, in 1977 4,295 persons responded to the class action notice by opting out of the suit entirely.

■ Despite the acquiescence of absentee parties, it remains my duty not to approve a settlement unless I am satisfied that the compromise is fair, reasonable and adequate. See Jamison v. Butcher & Sherrerd, 68 F.R.D. 479 (E.D.Pa.1975). Aside from the lack of objections, the major factor supporting settlement in my view is the likelihood of success at trial. Plaintiffs intended to prove an antitrust conspiracy with circumstantial evidence, chiefly that the challenged practice was idiosyncratic. The evidence on this point was far from conclusive and, indeed, there was a significant risk of a directed verdict, which would have left plaintiffs with no recovery. Viewed in this light the benefits under the settlement are adequate.

At the same time it must be said that defendants stood to lose a great deal by proceeding to trial. There was some risk that plaintiffs could get their case to the jury, in which case defendants had substantial treble damages exposure. Having lost a thoroughly prepared motion for summary judgment, defendants looked forward to some risk of an adverse verdict and the certain expense of possibly months of trial. The decision to settle from the defendants' viewpoint is well justified when the risk of loss and the cost of litigation are added together.

From the plaintiffs' perspective as well a realistic appraisal of the settlement must include the expense of a long trial and a hard-fought appeal. Even if plaintiffs could have established liability and damages they faced additional years of delay before receiving a recovery diminished by the toll of litigation.

■ The antitrust settlement is substantial but it is not ideal. Although the settlement provides in some cases for 100% of

economic loss, this amounts to only one-third of the treble damages available to a successful antitrust plaintiff. Similarly, the crediting of back benefits to class members with open loans rather than payment in cash is a disadvantage considering current interest rates. Some form of continuing notice of the right to delay payments would have been better. However, when balanced against a real prospect of no recovery these objections do not rise to the level of unfairness. See Sommers v. Abraham Lincoln Federal Savings & Loan Ass'n, 79 F.R.D. 571 (E.D.Pa.1978). I am satisfied, moreover, that the settlement agreement was the product of good faith, arms-length bargaining without any taint of collusion. In light of the voluminous discovery undertaken by experienced class counsel, I consider their recommendation another factor favoring the settlement. I am satisfied that the antitrust settlement is fair, reasonable and adequate.

### B. Truth in Lending and State Action Plaintiffs

■ The lion's share of the settlement (94%) is allocated to the antitrust claims. The truth in lending and state plaintiffs represent subclasses of the antitrust class restricted to certain lenders. Judged by the probability of success at trial and the potential recovery, I find that the settlement is fair, reasonable and adequate with respect to these claims as well.

The antitrust damage model applies equally to the state claims. Under the settlement the state claimants are to receive 1.4% annual interest on their monthly payment for the period of their loans, totaling $82,104.45, plus a fund of $50,000 set aside for counsel fees and expenses in the first instance. The 1.4% figure represents a greater than one-third recovery of economic loss, assuming, as is likely, that any recovery on the state claims would have been offset by an antitrust recovery. In contrast to the antitrust portion of the settlement, this figure represents the same proportion of damages recoverable, reflecting a greater probability of success. I find that these

claims were substantially more likely to succeed than the antitrust claims because they did not require proof of conspiracy. Nevertheless, federal law arguably preempted the field and the contract claim was novel. At the time of the settlement agreement, there was pending in the Court of Common Pleas a defense motion for summary judgment sufficiently impressive to prompt a fifty-eight page brief in opposition. Judge Marutani had delayed class certification pending resolution of the motion for summary judgment, thus raising the possibility that the plaintiffs could win the battle but lose the war in terms of the economic viability of the suit. In consideration of these factors, I will approve the settlement as to the state claims.

The remaining provision of the proposed settlement, accounting for 1% of the total benefits, awards $26,461.55 to the Truth in Lending class members. This figure represents 5% of each Truth in Lending plaintiff's monthly payment. It is difficult to assess the reasonableness of this amount because in a class action the applicable statute merely provides for damages in "such amount as the court may allow" up to a maximum of 1% of the net worth of the creditor or $500,000, whichever is less. 15 U.S.C. § 1640(a)(2)(A)(i). Class counsel estimates the maximum award here would have been $350,000. To assist the court in setting a figure the statute offers only a non–exclusive list of broad guidelines, the first of which is the amount of any actual damages awarded. 15 U.S.C. § 1640(a). In this case there were no actual damages, nor does it appear that intentional non–compliance, another listed factor, could have been proven. Moreover, liability itself was uncertain since it was enmeshed in the esoteric debate over whether the challenged charge was "interest in advance." *See Trist, supra,* 466 F.Supp. at 581–84. Under these circumstances I cannot say that the proposed compromise of the Truth in Lending claims in unfair.

Based on the foregoing I find that the proposed settlement is fair, reasonable and adequate with regard to each segment of the class and will accordingly enter an order finally approving the settlement agreed to by the parties.